UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLY A. DWYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TORONTO-DOMINION BANK,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiff Carly A. Dwyer ("Plaintiff"), by her attorneys, brings this action both on her own behalf and on behalf of a class ("Class") comprised of herself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P"), against Toronto-Dominion Bank ("TD Bank"), and alleges the following upon information and belief, except as to paragraphs pertaining to Plaintiff's own actions, which are alleged upon personal knowledge:

## INTRODUCTION

1. Plaintiff brings this action both on her own behalf and on behalf of a Class comprised of all others similarly situated to redress TD Bank's numerous unfair and deceptive acts and practices designed to mislead the public arising out of its assessment and collection of excessive overdraft fees.

2. TD Bank provides debit cards and/or ATM cards (collectively, "check cards") to its checking account customers. Through these check cards, customers may engage in transactions using funds directly from their accounts or may withdraw money

from their accounts at automatic teller machines. These are referred to as "point of sale" ("POS") or "debit" transactions.

3. If, according to TD Bank's accounting practices detailed below, a customer does not have sufficient funds in his or her account, the transaction is considered an "overdraft." TD Bank may honor or allow an overdraft to go through despite the lack of funds in the account.

4. According to its Personal Fee Schedule, if TD Bank allows a POS or debit transaction to proceed, it charges $35.00 for each separate overdraft (the "overdraft fee"), for a maximum of six times per day.

5. Before check cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrafted or otherwise deficient accounts for customers who were typically in good standing. Banks extended this courtesy largely because the third party involved in a sales transaction allowed customers to purchase goods or services with a check with an expectation that funds would be available and that the check would clear. For example, if a customer used a check to purchase goods from a retail store, the store would only know if the check cleared after the items had been purchased.

6. The same considerations are not present when the transaction is made with a check card. The bank could simply decline to honor debit or POS transactions made with check cards where there are insufficient funds in the account. Retail and service transactions would simply not take place if the customer were unable to present an alternative form of payment. ATM transactions could proceed if TD Bank provided a warning that an overdraft fee would be incurred and the customer chose to proceed

nevertheless. In fact, until a few years ago, most banks simply declined debit and/or POS transactions that would overdraw an account.

7. Instead of declining debit and/or POS transactions when there are insufficient funds, however, or warning the customer that an overdraft fee will be assessed if he or she proceeds with the transaction, TD Bank routinely processes such transactions in order to charge its customers an overdraft fee of $35.00, even when the transaction is for only a few dollars. Moreover, as explained in detail below, TD Bank reorders the customer's charges so the highest amount the customer has charged during the day is deducted first. This results in the customer reaching a negative balance quicker, ultimately resulting in higher overdraft fees. This automatic fee-based overdraft scheme is designed and intended to increase overdraft fee revenue.

8. Although it is possible to do so, TD Bank does not alert its check card customers at the time of a POS transaction or ATM withdrawal that the transaction will overdraw their account and cause them to incur fees.

9. Because TD Bank's check card customers are not notified of the potential overdraft and are not given the option to decline the check card transaction or to provide another form of payment, the customers incur monetary damages in the form of overdraft fees.

10. According to rules proposed by the Board of Governors of the Federal Reserve System, the Office of Thrift Supervision, Treasury, and the National Credit Union Administration ("Agencies"), "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. ... This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the

3

transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

11. TD Bank's overdraft policies make it difficult for a customer to avoid injury even if a customer carefully tracks the balance in his or her account. In fact, the Agencies have stated that the "injury" resulting from such policies "is not reasonably avoidable" by the customer. 73 F.R. 28904-01, 28929.[1]

12. TD Bank seeks to maximize the number of overdraft fees it charges check card customers because overdraft fees are a primary source of revenue for TD Bank. TD Bank's overdraft fees can cost the account holders hundreds of dollars in a matter of days, even when the customer might be overdrawn only by a few dollars. Even more egregious, a customer's account may not actually be overdrawn at the time the overdraft fee is charged or at the time of the POS transaction.

13. TD Bank has not followed the list of "best practices" with respect to overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" (herein "Joint Guidance") (attached hereto as Exhibit A), issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation and the National Credit Union Administration.

---

[1] It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available.

14. These "best practices" include: "Provide election or opt out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt out' of the overdraft program and provide a consumer disclosure of this option." Joint Guidance 70 F.R. 9127-01, 9132.

15. The "best practices" listed in the Joint Guidance also advises banks to "Alert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." Joint Guidance 70 F.R. 9127, 9132. It goes on to advise that "This notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." *Id.*

16. The list of "best practices" set forth in the "Overdraft Protection: A Guide For Bankers" issued by the American Bankers Association includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular POS or ATM transaction will cause them to incur overdraft fees. (See Exhibit B, attached hereto, at 9 and 13).

17. TD Bank does not disclose or does not reasonably disclose to its customers that they have the right to opt out of TD Bank's overdraft scheme. TD Bank also fails to notify customers when use of a check card, such as in an ATM or POS transaction, will cause an overdraft fee.

18.     Upon information and belief, Plaintiff alleges that TD Bank also manipulates and reorders debits from highest to lowest during the course of a day in an effort to cause as many overdrafts as possible.

19.     As a result of TD Bank's manipulation of customers' transactions records, funds in a customer's account are depleted more rapidly, and more overdraft fees are likely to be charged for multiple smaller transactions. Indeed, overdraft charges are likely to occur at times when, but for the manipulation, there would be funds in the account and no overdraft would occur. For example, if a customer has an account with a $100.00 balance and makes four transactions of $20.00 and a later transaction of $125.00 the same day, TD Bank debits the transactions from the account largest-to-smallest, thus subjecting the customer to four overdraft fees. Conversely, if the $125.00 transaction were debited last (in the order it was made), the customer would only be subject to one overdraft fee. Thus, it is through manipulation and alteration of customers' transactions records, TD Bank maximizes overdraft penalties imposed on customers.

20.     Plaintiff alleges that TD Bank reorders transactions for no reason other than to increase the number of overdraft fees it can charge. This practice is a breach of the implied covenant of good faith and fair dealing.

**PARTIES**

21.     Plaintiff Carly A. Dwyer is an individual who, at all times material hereto, was and is a resident of Commonwealth of Massachusetts, and a "citizen" of Massachusetts.

22.     Defendant TD Bank is a corporation organized and existing under the laws of Canada with its principal executive offices located at Two Portland Square, P.O. Box

9540, Portland, Maine 04112-9540. For the purposes of diversity jurisdiction, TD Bank may be considered a "citizen" of Canada or the State of Maine. At all times relevant hereto, TD Bank was and is doing business within this judicial District.

23. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of TD Bank, its subsidiaries, affiliates and other related entities, were the agents, servants and employees of TD Bank, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of TD Bank, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of TD Bank committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of TD Bank while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction over this class action under 18 U.S.C. §1332(d), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5). As set forth above, Plaintiff is a citizen of Massachusetts, whereas TD Bank is a citizen of Canada or Maine. Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the

proposed Plaintiff Class in the aggregate are citizens of a State other than Massachusetts, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 18 U.S.C. §1332(d)(2)(A).

25.     Venue in this District is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff is a citizen of this District and TD Bank conducts business within and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

26.     According to its website:

> TD Bank, America's Most Convenient Bank®, is one of the 15 largest commercial banks in the United States with $134 billion in assets, and provides Customers with a full range of financial products and services at more than 1,000 convenient locations from Maine to Florida.[2]

27.     TD Bank is a national bank subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and OCC regulations.

28.     TD Bank's Personal Deposit Account Agreement (the "Agreement," attached hereto as Exhibit C) contains a section entitled "Overdrafts" which states the following:

> An overdraft is an advance of funds greater than the amount that has become available in accordance with the Bank's Funds Availability Policy, made by us to you, at our sole discretion. Overdrafts include advances to cover a check, in-person withdrawal, ATM withdrawal, or a withdrawal by other electronic means from your Account. We may demand immediate repayment of any overdraft and charge you an overdraft fee (see Fee Schedule).
>
> You agree to pay us, when we ask you, all of our costs of collecting an overdraft, to the fullest extent permitted by applicable law. These costs

---

[2] https://www.tdbank.com/aboutus/about_us.html.

> include, but are not limited to, our legal fees and expenses. If more than one of you owns an Account, each of you will be responsible for paying us the entire amount of all overdrafts and obligations resulting from the overdrafts.
>
> We do not have to allow you to make an overdraft. Intentionally withdrawing funds from an Account when there are not enough funds in the Account to cover the withdrawal or when the funds are not yet available for withdrawal may be a crime.

Agreement at 16.

29. The Agreement fails to give the customers the option to "opt out" from TD Bank's overdraft scheme.

30. At the time that TD Bank's check card is used, for example at a POS or at an ATM, TD Bank is able to determine almost instantaneously whether there are sufficient funds in a customer's account to cover that particular transaction. TD Bank has the technological capability to decline transactions or notify customers at that very moment that the particular check card transaction would result in an overdraft. TD Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do this because it seeks to maximize its overdraft fees.

31. Plaintiff is a current checking account customer with TD Bank. She originally opened her account with TD Banknorth, which merged with TD Bank in September of 2009.

32. Upon the merger, Plaintiff's account became an account of TD Bank, subject to the terms of the various agreements, disclosures, schedules and other terms TD Bank has imposed upon Plaintiff and other similarly situated customers, including the Agreement referenced above.

33.     At no time since the merger, after which Plaintiff's TD Banknorth account became an account of TD Bank, did TD Bank provide her with the ability to opt out of the overdraft scheme.

34.     TD Bank charged Plaintiff six $35.00 overdraft fees on September 14, 2009 totaling $210 even though her checking account was only $-101.49. Moreover, upon information and belief, TD Bank reordered Plaintiff's purchases so the largest transaction was deducted first which results in, as described above, a higher number of overdraft charges. TD Bank never notified Plaintiff at the time she made the check card transactions, including the POS transactions described above, that her checking account was overdrawn or that it would charge her an overdraft fee as a result of the transaction. As a result of these improper overdraft fees, Plaintiff has suffered monetary damages.

## CLASS ALLEGATIONS

35.     Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

36.     Pursuant to F.R.C.P. 23, Plaintiff brings this action on behalf of herself and a class (the "Class") comprised of all TD Bank customers who had check cards and who were charged overdraft fees during the relevant time period. TD Bank's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All putative Class members were and are similarly affected by TD Bank's misconduct, as set forth in detail above, and the relief sought herein is for the benefit of Plaintiff and members of the putative Class. Plaintiff alleges that the plaintiff Class is so numerous that joinder of all members would be impractical.

37. Based on the size and popularity of TD Bank, it is apparent that the number of customers of TD Bank would at least be in the many thousands, thereby making joinder impossible.

38. Questions of law and fact common to the plaintiff Class exist and predominate over questions affecting only individual members, including, *inter alia*:

(a) Whether TD Bank made misrepresentations when engaging in the above-mentioned conduct, including not disclosing material facts, concerning overdraft fees when using its check cards;

(b) Whether TD Bank acted negligently when engaging in the above-mentioned conduct, including not disclosing material facts, concerning overdraft fees when using its check cards;

(c) Whether TD Bank interfered with the possession of the money of Class members when it engaged in the above-mentioned conduct, including not disclosing material facts, concerning overdraft fees when using its check cards;

(c) Whether TD Bank was unjustly enriched when engaging in the above-mentioned conduct, including not disclosing material facts, concerning overdraft fees when using its check cards; and

(c) Whether TD Bank's conduct as set forth above injured costumers and if so, the extent of the injury.

39. The claims asserted by Plaintiff in this action are typical of the claims of other Class members as the claims arise from the same course of conduct by TD Bank, and the relief sought is common.

40.    Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

41.    Certification of this class action is appropriate under F.R.C.P. 23(b) because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.  This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action remedy, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.  Certification is also appropriate because TD Bank acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.  Further, given the large number of costumers of TD Bank, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

42.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.  The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## **FIRST CAUSE OF ACTION**
(Intentional Misrepresentation)

43. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

44. As mentioned in detail above, TD Bank, without adequately notifying the customer, reordered the customer's charges so the highest amount the customer charged during the day is deducted first, resulting in the customer reaching a negative balance quicker leading to higher overdraft fees. Moreover, TD Bank failed to adequately disclose to its customers certain facts concerning overdraft fees at the time the customer was engaging in the transaction including, but not limited to, that there is a potential for an overdraft and also not giving the customer the option to decline the check card transaction or to provide another form of payment.

34. TD Bank was aware that the above-mentioned conduct was improper and the disclosures, which TD Bank refused to make, were necessary and material to customers since customers may choose to decline overdraft protection and/or choose to terminate the transaction which would result in an overdraft fee.

35. TD Bank purposefully engaged in the above-mentioned conduct since the revenue generated from this conduct and lack of disclosures constituted a large portion of TD Bank's income.

36. Plaintiff and others believed, trusted and relied on TD Bank, and, in justifiable reliance thereon, continued to engage in transactions resulting in higher overdraft fees.

37. As a proximate result of these acts, Plaintiff and other members of the Class were induced to spend an amount to be determined at trial on overdraft fees as a result of TD Bank's misconduct, and thereby lost disproportionate sums of money.

38. Plaintiff and other customers, in incurring overdraft fees, relied on TD Bank's above representations, all to their damage.

## SECOND CAUSE OF ACTION
(Negligent Misrepresentation)

45. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

46. As mentioned in detail above, TD Bank, without adequately notifying the customer, reordered the customer's charges so the highest amount the customer charged during the day is deducted first, resulting in the customer reaching a negative balance quicker leading to higher overdraft fees. Moreover, TD Bank failed to adequately disclose to its customers certain facts concerning overdraft fees at the time the customer was engaging in the transaction including, but not limited to, that there is a potential for an overdraft and also not giving the customer the option to decline the check card transaction or to provide another form of payment.

39. TD Bank was aware that the above-mentioned conduct was improper and the disclosures, which TD Bank refused to make, were necessary and material to customers since customers may choose to decline overdraft protection and/or choose to terminate the transaction which would result in an overdraft fee.

40. Plaintiff and others believed, trusted and relied on TD Bank, and, in justifiable reliance thereon, continued to engage in transactions resulting in higher overdraft fees.

14

41. As a proximate result TD Bank's negligence, Plaintiff and other members of the Class were induced to spend an amount to be determined at trial on overdraft fees as a result of TD Bank's misconduct, and thereby lost disproportionate sums of money.

42. Plaintiff and other customers, in incurring overdraft fees, relied on TD Bank's above representations, all to their damage.

### THIRD CAUSE OF ACTION
(Conversion)

43. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

44. Plaintiff and Class members own and have a right to possess the money in their checking accounts.

45. TD Bank interfered with, and continues to interfere with, possession of this money owned by Plaintiff and Class members by assessing overdraft fees as the result of check card transactions, including POS and ATM transactions, by, as described in detail above, reordering customers' charges resulting in a higher number of overdraft fees and failing to disclose to its customers certain facts concerning overdraft fees at the time the customer was engaging in the transaction including, but not limited to, that there is a potential for an overdraft and also not giving the customer the option to decline the check card transaction or to provide another form of payment.

46. Plaintiff and Class members never affirmatively consented to TD Bank's direct debit of overdraft fees from their checking accounts as a result of check card transactions, including POS and ATM transactions.

15

47.  Plaintiff and Class members have been, and will continue to be, damaged by TD Bank's wrongful assessment of overdraft fees in an amount that is capable of identification through TD Bank's records.

48.  Plaintiff and Class members are entitled to punitive damages because TD Bank has engaged in malice and/or oppression.

## **FOURTH CAUSE OF ACTION**
(Unjust Enrichment)

49.  Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

50.  TD Bank has benefited from its unlawful acts by receiving excessive revenue derived from, as described in detail above, the overdraft fees incurred by its customers. This excessive revenue has been received by TD Bank at the expense of Plaintiff and other members of the Class, under circumstances in which it would be inequitable for TD Bank to be permitted to retain the benefit.

51.  Plaintiff and other members of the Class are entitled to the establishment of a constructive trust consisting of the benefit conferred upon TD Bank in the form of their excessive revenue derived from the overdraft fees from which Plaintiff and other Class members may make claims on a *pro rata* basis for restitution.

## **FIFTH CAUSE OF ACTION**
(For Injunctive and Declaratory Relief)

52.  Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

53. As set forth above, TD Bank engaged in improper and unlawful practices in connection with overdraft fees charged to its customers with check cards, including Plaintiff and other members of the Class.

54. TD Bank's practices described herein are unlawful and against public policy and, therefore, TD Bank should be prohibited and enjoined from engaging in these practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment for them against TD Bank follows:

(a) Certifying the Class pursuant to F.R.C.P. 23, certifying Plaintiff as the representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

(b) Awarding Plaintiff and the Class permanent injunctive relief prohibiting, restraining and enjoining TD Bank from engaging in the conduct complained of herein concerning overdraft fees in connection with its check cards in the manner described herein;

(c) Ordering TD Bank to make the above-mentioned disclosures to its customers;

(d) Awarding Plaintiff and the Class actual damages or statutory damages, consequential damages, other special damages, attorneys' fees and other reasonable costs; and

(e) Granting any such other and further legal or equitable relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

Dated: December 15, 2009

                                          Respectfully submitted,

                                          Carly A. Dwyer
                                          By her attorneys,

                                          /s/ Patrick J. Sheehan
                                          Patrick J. Sheehan (BBO # 639320)
                                          WHATLEY DRAKE & KALLAS, LLC
                                          60 State Street, 7th Floor
                                          Boston, MA 02109
                                          Tel.: (617) 573-5118
                                          psheehan@wdklaw.com

                                          Joe R. Whatley, Jr.
                                          Edith M. Kallas
                                          Shujah A. Awan
                                          WHATLEY DRAKE & KALLAS, LLC
                                          1540 Broadway, 37th Floor
                                          New York, NY 10036
                                          Tel: (212) 447-7070
                                          jwhatley@wdklaw.com
                                          ekallas@wdklaw.com
                                          sawan@wdklaw.com

                                          Leonard A. Frisoli (BBO # 638201)
                                          Zaheer A. Samee (BBO # 667751)
                                          Frisoli Associates, P.C.
                                          Bulfinch Square
                                          43 Thirndike Street
                                          Cambridge, MA 02141
                                          Tel:  (617) 494-0200
                                          laf@frisolilaw.com
                                          zas@frisolilaw.com
                                          jay.wolman@lawyeradvocates.com

                                          *Attorneys for Carly A. Dwyer*